FRANKLIN ROOFING,
INC., Appellant,

v.

EAGLE ROOFING AND SHEET MET-
AL,INC. and Heritage Mutual In-
surance Company, Appellees.

No. 2000–CA–000241–MR.

Court of Appeals of Kentucky.

Nov. 16, 2001.

■■■■■■■■■■■■

————

John H. Dwyer, Jr., Pedley Zielke Gordinier & Pence, PLLC, Louisville, KY, for appellant.

James T. Gilbert, Coy, Gilbert & Gilbert, Richmond, KY, for appellee Eagle Roofing & Sheet Metal, Inc.

Mark L. Moseley, Landrum & Shouse, Lexington, KY, for appellee Heritage Mutual Insurance Company.

Before GUDGEL, Chief Judge;
EMBERTON, and McANULTY, Judges.

## OPINION

McANULTY, Judge.

Appellees sought a declaratory judgment in Madison Circuit Court to determine whether a contract existed between Eagle Roofing and Sheet Metal, Inc., (hereinafter Appellee) and Franklin Roofing, Inc., (hereinafter Appellant), a foreign corporation. Appellant asked the court to dismiss the action for lack of personal jurisdiction under Kentucky's long-arm statute, KRS 454.210, but the court denied the motion. This appeal follows.

Because this dispute deals with a determination of jurisdiction, a more detailed examination of the facts is necessary. Appellant is a roofing company with its principal place of business in Painesville, Ohio. It has no place of business in Kentucky, no registered agent for the service of process in Kentucky, and according to the record has never performed work here.

In September of 1995, Appellant was awarded a contract to replace the roof on a post office building in Cleveland, Ohio. Because some of the work to be done was outside Appellant's field of expertise, Appellant was required to submit the name of a subcontractor that would complete a large portion of the project. Appellant's first suggested subcontractor was apparently deemed unsuitable, so Appellant contacted one of its regular material suppliers to obtain names of other potential subcontractors. It was this material supplier that first contacted Appellee, a roofing company in Richmond, Kentucky, about the Cleveland project.

According to the record, Appellee heard about the project first from this supplier, then contacted Appellant in Ohio regarding the possibility of submitting a bid. Shortly thereafter, Appellee's representative traveled to Cleveland to visit the building and obtain plans and specifications. In late December 1995, Appellee submitted a bid to Appellant for completion of the project at a cost of more than $2 million. The bid was accepted, and Appellee began work.

In February of 1996, the parties set about confirming the agreement in writing. Different versions of the contract were negotiated back and forth between the parties by mail, telephone and fax. At no time did any representative of Appellant come to Kentucky for negotiations on the contract, but Appellee's representatives did travel to Ohio several times for meetings and contract negotiations.

Finally, on March 28, 1996, Appellee's representatives traveled to Cleveland for a pre-roof conference. Actual construction of the roof was due to start on April 1st, and a final version of the contract was purportedly ready for Appellees to sign. However, Appellees refused to sign the document, claiming the changes they had requested during negotiations were not made. Further, additional problems came up during the course of the meeting, which led Appellee to notify Appellant that the company no longer wished to be the sub-

contractor on the Cleveland project. Because of Appellee's decision to pull out of the job, Appellant incurred additional costs in completing the project and therefore sought restitution under Appellee's performance bond, which was provided by co-appellee Heritage Mutual Insurance Company through a Bowling Green insurance agency.

Appellee filed an action for declaratory relief in the Madison Circuit Court shortly after Appellant made its demand for restitution under the performance bond, asking the court to find that no contract actually existed between the parties. Appellant tried to have the case removed to the U.S. District Court for the Northern District of Ohio. When that attempt was unsuccessful, Appellant asked the Madison Circuit Court to dismiss the action altogether, claiming that court could not exercise personal jurisdiction over the Ohio company under Kentucky's long-arm statute, specifically KRS 454.210(2)(a)(1), which applies to any person "transacting any business in this Commonwealth." The trial court denied Appellant's motion to dismiss, and at trial, the jury found in favor of Appellee, deciding that no contract existed between the parties. This appeal followed.

Appellant asks this court to find that the Madison Circuit Court unconstitutionally exercised personal jurisdiction in this case. Also, Appellant asks us to find that there was no factual dispute over the existence of a contract and that the instructions given to the jury at trial were inappropriate. We find it unnecessary to develop these two latter arguments, because we agree that the Madison Circuit Court did not have personal jurisdiction over the Appellant. Thus, we reverse and dismiss.

■ Kentucky courts may reach to the full constitutional limits of due process in exercising jurisdiction over non-resident defendants under the state's long-arm statute. In determining the limits of due process, we must find that Appellant had "minimum contacts" with Kentucky as decided in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This Court has established a three-prong test to determine whether the requisite minimum contacts exist to exercise personal jurisdiction over a non-resident defendant. The elements are: (1) has the defendant purposely availed itself of the privilege of acting within the Commonwealth; (2) did the cause of action arise from the defendant's activity; and (3) does there exist a substantial enough connection to the Commonwealth to make jurisdiction over the defendant reasonable? *Mohler v. Dorado Wings, Inc.*, Ky.App., 675 S.W.2d 404, 405–6 (1984).

■ First, we do not believe the Appellant has purposefully availed itself of the privilege of acting in the Commonwealth. Appellant is a non-resident company without an office, post office box or phone listing for the purpose of transacting business in this state. At no point did Appellant solicit business in this state. In fact, Appellee contacted Appellant in Ohio regarding the possibility of submitting a bid on the Cleveland project after hearing about the job from a third party. While Appellee's representatives visited Ohio several times, Appellant's representatives never traveled to or visited Kentucky throughout the duration of the relationship. Additionally, the demand under Appellee's performance bond was not made in Kentucky; Appellant contacted the insurer directly at its headquarters in Wisconsin, not at the Kentucky agency which simply sold the bond to Appellee.

Further, all contract negotiations took place via telephone, mail or fax, with each party responding from its primary place of business. The Sixth Circuit Court of Ap-

peals has identified these sorts of communications as "random, fortuitous and attenuated," the type that the U.S. Supreme Court has rejected "as a basis for haling non-resident defendants into foreign jurisdictions." *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1301 (6th Cir.1989). The agreement the parties sought to finalize was not part of a series of transactions, but was only a single agreement to work on a single project, so there was no continuing relationship between the parties. From this evidence, we simply are not convinced that Appellant reached out beyond one state to create continuing relationships and obligations with citizens of another state. *Burger King v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

We also do not believe that the consequences caused by Appellant in Kentucky have a substantial enough connection to the state for personal jurisdiction to be reasonable.

■ Appellee points to the $2 million contract price as Appellant's substantial connection to Kentucky, claiming that Appellant must have known the kind of impact such a sum would have on the state's economy. However, we find this argument to be unpersuasive. The payment of a sum of money does not qualify as a "substantial connection." We believe that imposing jurisdiction on a non-resident defendant based on a contract price which may never make it to the forum state (and in this case it did not, since Appellee left the job before it was complete) is certainly unreasonable.

■ In *Texas American Bank v. Sayers,* Ky.App., 674 S.W.2d 36 (1984), this court named several other considerations to be evaluated in determining whether a party has a reasonable "substantial connection" to the forum state. Reasonableness may be found if the party was an "active buyer", if the party could foresee being sued in the state, or if there were physical contacts between the party and the state. *Texas American Bank, supra,* at 39. We agree that the Appellant does not meet these criteria.

■ Both parties admit that Appellant had no physical contact with the state of Kentucky. We doubt Appellant could foresee being sued in Kentucky on the basis of one contract with a Kentucky company to perform work on a single project in Cleveland. Also, while Appellant did engage in negotiations with Appellee over the contract at issue, it is clear that the Appellee was the more "active" party. Appellee contacted Appellant about the job, submitted the bid to Appellant, and traveled to Ohio several times to complete the contract. Therefore, we agree that Appellant did not have a "substantial connection" to Kentucky, and thus it would be unreasonable to exercise personal jurisdiction over Appellant in this case.

We vacate the order of the trial court and remand for an order of dismissal.

ALL CONCUR.